AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
OCT 17 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Black Galaxy 8S cell phone seized as FP&F Number 2019250600088301

Case No. '19 MJ4553

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960, 963 | Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of Special Agent Lisa Tracy

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Lisa Tracy, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/17/19

_____
Judge's signature

City and state: San Diego, CA

Hon. Mitchell D. Dembin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Lisa Tracy, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

>Blue Galaxy S9+ cell phone
>
>IMEI No. 358216090699687
>
>Seized as FP&F No. [2019250600088301 Line Item: 0005]
>
>("Target Device 1")
>
>Black Galaxy 8S cell phone
>
>Seized as FP&F No. [2019250600088301 Line Item: 0005]
>
>("Target Device 2")

(collectively, the "Target Devices") as further described in Attachment A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960 and 963, as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Aaron Espinoza ("Defendant") for importing approximately 10.36 kilograms (22.83 pounds) of methamphetamine and approximately 1.18 kilograms (2.6 pounds) of heroin from Mexico into the United States. *See U.S. v. Espinoza*, Case No. 19-cr-2753-AJB (S.D. Cal.) at ECF No. 1 (Complaint). The Target Devices are currently being held in an evidence storage warehouse located at 6721 Sycamore Canyon Blvd., Riverside, CA 92507.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

4. I am a Special Agent for the Department of Homeland Security, Immigration

and Customs Enforcement, Homeland Security Investigations (HSI). I have been employed as a special agent since March 1996. I am a graduate of two Federal Law Enforcement Training Center academies in Glynco, Georgia. I am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

5. I have been employed as a federal law enforcement officer on the southwest border for approximately 26 years. I was employed as a United States Border Patrol Agent in the San Diego Sector from November of 1993 to March of 1996. From March of 1996 to March of 2003, I was employed as a Special Agent, in the San Diego and Imperial Counties, with the United States Department of Justice, Immigration & Naturalization Service (INS). On March 1, 2003, at the inception of the Department of Homeland Security (DHS), I became a Special Agent with the DHS Bureau of Immigration and Customs Enforcement in San Diego which is currently known as Immigration and Customs Enforcement (ICE), HSI. I am currently assigned to the HSI, Deputy Special Agent in Charge, San Ysidro Office, Contraband Smuggling Group 3. My current assignment is to investigate narcotics interdictions, and Drug Trafficking Organizations (DTOs) that import illicit narcotics across the U.S./ Mexico international border and/or transport the smuggled narcotics to and/or through the Southern District of California.

6. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-

conspirators who are transporting narcotics and/or proceeds from narcotics sales.

7.      Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8.      This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a.   tending to indicate efforts to import methamphetamine and/or heroin, or some other federally controlled substance, from Mexico into the United States;

   b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine and/or heroin, or some other federally

3

controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9. On June 19, 2019, at approximately 1:38 p.m., defendant Aaron Espinoza ("Defendant") applied for permission to enter the United States at the Otay Mesa Port of Entry. Defendant was the driver and sole occupant of a 2012 Hyundai, bearing California license plates. Defendant was referred for secondary inspection, and Customs and Border Protection Officers used the Z-portal to observed anomalies in the vehicle's spare tire. Customs and Border Protection Officers subsequently discovered 22 packages concealed within Defendant's vehicle. Twenty packages tested positive for methamphetamine, and weighed approximately 10.36 kilograms (22.83 pounds). Two packages tested positive for heroin, and weighed approximately 1.18 kilograms (2.60 pounds). Defendant was subsequently arrested, and the Target Devices were seized from Defendant.

10. Later, agents read Defendant his *Miranda* rights, and he agreed to speak to agents without an attorney present. Defendant denied knowledge of the drugs in his vehicle, but admitted that he was the true owner of the vehicle, even though it was not registered in his name. Defendant stated that he traveled from San Diego to Mexico on the evening of June 17th and met his girlfriend at "JP's" house in Rosarito. Defendant stated he left his vehicle at JP's house and drove to Ensenada for the night with his girlfriend. Defendant stated he left the keys to his car with JP.

11. Defendant acknowledged ownership of Target Device 1 and Target Device 2. Defendant stated that Target Device 1 was a replacement for Target Device 2, and that Target Device 2 did not work.

12. In light of the above facts and my own experience and training, there is

4

probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Additionally, crossing records indicate Defendant began crossing in the vehicle on June 28, 2018, and continued to cross approximately 20 times between that date and the date of his arrest. Accordingly, I request permission to search the Target Device for data beginning on May 28, 2018, up to and including June 20, 2019, which was the day following Defendant's arrest.

## METHODOLOGY

13.   It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of

the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

16. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

17. Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963.

18. Because the Target Device was seized at the time of Defendant's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Device. As stated above, I believe that the appropriate date range for this search is from May 28, 2018, up to and including June 20, 2019.

19. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachment A-1 and A-2 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Lisa Tracy
Homeland Security Investigations

Subscribed and sworn to before me this _17_ day of October, 2019.

_____
Hon. Mitchell D. Dembin
United States Magistrate Judge

## **ATTACHMENT A-2**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    Black Galaxy 8S cell phone

    Seized as FP&F No. [2019250600088301 Line Item: 0005]

    ("Target Device 2")

Target Device #2 is currently being held by a contracted vendor in an evidence storage warehouse located at 6721 Sycamore Blvd., Riverside, CA 92507.

## **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 28, 2018, up to and including June 20, 2019:

a. tending to indicate efforts to import methamphetamine and/or heroin, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine and/or heroin, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine and/or heroin, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine and/or heroin, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.